# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

SHAWN SHERMAN,          )
                                )

       Petitioner,          )
                                )

     vs.                  )       **Case No. 4:10CV1912SNLJ/MLM**
                                )

MICHAEL BOWERSOX,      )
                                )

       Respondent.       )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on the Petition for Writ of Habeas Corpus filed by Petitioner Shawn Sherman ("Petitioner") filed pursuant to 28 U.S.C. § 2254. Doc.1. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 9. Petitioner filed a Reply. Doc. 14. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc. 6.

## I.
## BACKGROUND

Petitioner was charged, by Indictment, dated December 13, 2001, as follows: Count I, the class A felony of assault in the first degree, in that on November 3, 2001, acting with William Martin, Petitioner caused serious physical injury to Eddie Montague by shooting him in the head with a firearm; Count II, the class A felony of robbery in the first degree, in that Petitioner, acting with Martin, forcibly stole a car, a white Nissan Maxima, and U.S. currency in the possession of Savong Danh, and in the course thereof Martin, another participant in the crime, displayed and threatened immediate use of what appeared to be a deadly weapon; Count III, the class A felony of robbery in

the first degree, in that Petitioner, acting with Martin, forcibly stole jewelry and U.S. currency in the possession of Eddie Montague, and in the course thereof, Martin, another participant in the crime, caused serious physical injury to Eddie Montague; Count IV, armed criminal action in regard to the conduct described in Count II; and Count V, armed criminal action in regard to the conduct described in Count III. Petitioner was charged as a prior offender in that he had previously been convicted of the felony of unlawful use of a weapon. Resp. Ex. C at 15-17. The State filed a Memorandum of Nolle Prosequi in regard to one count of assault in the first degree (Count I) and one count of armed criminal action (Count V). Resp. Ex. C at 146.

The Missouri appellate court summarized the testimony at Petitioner's trial as follows:[1]

> On November 3, 2001, the Four-M's Pawn Shop ("Four-M's") was robbed. Eddie Montague ("Eddie"), the husband of the owner Sharon Montague ("Montague"), is a retired police officer who works at Four-M's. The day of the robbery, shortly after Eddie arrived at Four-M's for work, Elmer Freeman

---

[1] In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003)). See also Simmons v. Luebbers, 299 F.3d 929, 942 (8th Cir. 2002). Explicit and implicit findings by state trial and appellate courts are presumed to be correct. Rushen v. Spain,464 U.S. 114, 120, (1983); Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Sumner v. Mata, 449 U.S. 539, 545-47, 550 (1981). Additionally, the Eighth Circuit holds that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 867 (8th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991)). See also Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988). The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. See Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989) (citing Marshall v. Lonberger, 459 U.S. at 431-32; Cuyler v. Sullivan, 446 U.S. 335, 341-42 (1980)). "Questions of witness credibility are usually considered to be issues of fact." Id.(citing Brown v. Allen, 344 U.S. 443, 506 (1953)). Mixed questions of law and fact, however, are not entitled to a presumption of correctness pursuant to § 2254(d). Cornell v. Nix, 976 F.2d 376, 382 (8th Cir. 1992).

("Freeman"), who was helping in the shop that day, arrived. Eddie was in the back office with the safe when a man entered the shop. Eddie came into the showroom to greet the man, who then shot him in the face. After he fell, Eddie was semi-conscious and heard a voice ask, "Did you kill that little motherfucker?" Next, Eddie heard a voice answer, "I killed him" and stayed still on the floor where he had fallen.

The two robbers told Freeman to get down on the floor and then asked him about the safe. Only Eddie and Montague were able to open the safe and Freeman told the robbers that he did not know anything about the safe and stayed down on the floor. Eddie and Freeman both heard voices and other noises coming from the room with the safe. When it became quiet, Eddie got up and pushed the alarm and laid back down in the same place.

Freeman heard a buzzer indicating someone in the doorway to the shop, then heard the door open. When he looked up, he saw the robbers get into a white car and then he dialed 911. The police arrived and talked to Eddie. When they checked the safe, they found that almost $17,000 in cash, a nine millimeter pistol, and about $30,000 in jewelry were missing. The police discovered a palm print on the top of the counter when they dusted for fingerprints and recovered a bullet from the door jamb near where Eddie was shot.

Montague cleaned the jewelry cases with window cleaner every night when she closed up, including the night before the robbery. A latent print examiner matched the palm print to [Petitioner]'s palm. The police were given [Petitioner]'s name as a suspect in the robbery, along with someone known as Will. With other information obtained during the investigation, Sgt. Gary Foster ("Foster") set up surveillance for a white car with a broken passenger side mirror. [Petitioner] drove by in the white car with a passenger later identified as William Martin ("Martin") and Foster approached them after they got out of the car.

Foster identified himself as a detective and stated that he wanted to talk to [Petitioner] and Martin. He searched the car and found a revolver, which he believed at the time was the gun used in the Four-M's robbery, although it was later found not to be the same gun. Foster placed both men under arrest, gave them their <u>Miranda</u> rights, and put them into separate patrol cars. At the North Patrol station, Foster questioned [Petitioner] and stated that he would search [Petitioner]'s home looking for evidence.

Foster went to [Petitioner]'s residence with several other detectives. The woman who answered the door identified herself as [Petitioner]'s mother, gave them consent to search and signed a consent form. Foster asked the woman if her son had given her any gifts and she gave him several pieces of jewelry that were later identified as coming from the Four-M's robbery. When the detectives searched [Petitioner]'s

bedroom, they found a notebook with a page labeled "The Four-M's Upset" which reads as follows:

> No. 1, Go into the store and look at jewelry. No. 2, Let the man come help you. No. 3, Once he get there, ask him why you right here, can you tell me if this ring is real. No 4, When you pass the ring to him and he reach for it, jump over the county [sic], shank him in the neck three times before he can do anything. No. 5, After that, put gloves on and turn off any lights while I'm coming in and pull him to the back before any blood hits the floor. No. 6, Stay there. No. 7, When I come in, I will jump over the counter and check everything you done to assure no evidence. Okay. No. 8, After that, we get the videotapes, jewelry, and money with no fingerprints. Put everything in a TV box or any box and leave normal. No. 9, Must get video tapes. Don't touch anything with bare hands.

After finding the gun used in the robbery secreted in the basement, Foster returned to the police station and again advised [Petitioner] of his <u>Miranda</u> rights. [Petitioner] waived those rights and confessed to his participation in the robbery to Foster. The police recovered additional jewelry and cash from [Petitioner]'s girlfriend and his sister.

Martin gave a statement to the police when he was questioned. He stated that he and [Petitioner] had robbed Four-M's together. At trial, however, Martin testified that he robbed four M's with the help of Freeman, but gave most of the cash and jewelry he took to [Petitioner] because he "felt like it."

Resp. Ex. F at 2-5.

A jury found Petitioner guilty of first degree robbery as alleged in Count II and not guilty on the remaining Counts. Resp. Ex. C at 130. The court found Petitioner was a prior offender and sentenced him to thirty years imprisonment. Resp. Ex. C at 143-45. Petitioner filed a direct appeal. Resp. Ex. D. By decision, dated December 20, 2005, the Missouri appellate court affirmed Petitioner's conviction and sentence. Resp. Ex. F. The Missouri appellate court issued the mandate on January 11, 2006. Resp. Ex. G.

Pursuant to Rule 29.15, Petitioner filed a pro se post-conviction relief motion, on February

27, 2006. Resp. Ex. H at 3-8. The court appointed counsel and appointed counsel filed an amended

motion. Resp. Ex. H at 16-39. By decision, dated February 6, 2009, the motion court denied

Petitioner post-conviction relief, without an evidentiary hearing. Resp. Ex. H at 39-42. Petitioner

filed an appeal of the motion court's decision. Resp. Ex. I. By decision dated December 8, 2009,

the Missouri appellate court affirmed the decision of the motion court. Resp. Ex. K.

On October 8, 2010, Petitioner filed a § 2254 Petition, in which he raises the following issues:

**(1)** The trial court erred by failing to issue a judgment of acquittal because the evidence was insufficient to prove that Petitioner participated in the robbery;

**(2)** Petitioner received ineffective assistance of counsel because trial counsel failed to advise him that he had a right to testify at the hearing to suppress his statements;

**(3)** Petitioner received ineffective assistance of counsel because counsel did not ask Sgt. Foster if he had beaten Petitioner with telephone books and nightsticks in order to get Petitioner to confess.

## II.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"),

applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of

April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). In conducting habeas review

pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were

"contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the

Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's

decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782-83 (8th Cir. 2006) (quoting Williams v. Taylor,

529 U.S. 362, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the

Supreme Court precedent which he thinks the state courts acted contrary to or applied unreasonably. Id. at 283 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. §2254(d)(1)." Id. at 784. "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1). Id. at 783 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)). See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state-court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that

application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1)."), cert. denied, 543 U.S. 1027 (2004).

The United States Supreme Court has defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the

nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. <u>Wright v. West</u>, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

<u>Yarborough v. Alvarado</u>, 541 U.S. 652, 644 (2004)**.**

## III.
## EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. <u>Sweet v. Delo</u>, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. <u>Id.</u> at 1150 (citing <u>Reese v. Delo</u>, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." <u>Id.</u> at 1151 (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim."<u>Abdullah v. Groose</u>, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" <u>Id.</u> at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." <u>Id</u>. at 412.

Petitioner in the matter under consideration raised the issues which he raises before this court before the Missouri appellate court. As such, the court finds that he has not procedurally defaulted these issues and that he has exhausted his State remedies.

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. Petitioner filed his § 2254 Petition within this limitation period. As such, the court finds that his § 2254 Petition was timely filed.

## IV.
## STANDARD FOR INEFFECTIVE ASSISTANCE OF COUNSEL

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 697. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 669. The court is not required to "address both

components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Id. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

The Supreme Court has emphasized that the standard to be applied by a federal court when reviewing a Strickland claim of a state prisoner pursuant to § 2254 is "doubly deferential judicial review." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009). The Court further explained that "because the Strickland standard is a general standard, a state court has even more latitude to

reasonably determine that a defendant has not satisfied that standard." Id. (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

# V.
# DISCUSSION

**Ground 1 - The trial court erred in failing to issue a judgment of acquittal because the evidence was insufficient to prove that Petitioner participated in the robbery:**

In support of Ground 1, Petitioner argues that the decision of the Missouri appellate court was an unreasonable determination of the facts in light of the evidence produced at trial. In particular, Petitioner contends that the "alleged palm print could have been there before the robbery"; that the "details of the robbery in the notebook [found in Petitioner's room] were incorrect as to how the robbery took place"; and that Martin testified that he robbed the pawn shop with the help of Freeman and that Petitioner "had nothing to do with it." Doc. 14 at 2.

Upon considering the issue of Petitioner's Ground 1, the Missouri appellate court held:

On a question of sufficiency of evidence, appellate review is limited to determining whether there was sufficient evidence from which a reasonable trier of fact might have found the appellant guilty beyond a reasonable doubt. State v. Bess, 73 S.W.3d 791, 793 (Mo. App. E.D. 2002). Further, in assessing the sufficiency of the evidence, we accept as true all evidence favorable to the verdict, including all favorable inferences from the evidence, and disregard all evidence and inferences to the contrary. Id. Our function is not to weigh the evidence, but to determine if there was sufficient evidence from which a trier of fact could reasonably find the defendant guilty. State v. Buford, 907 S.W.2d 316, 317 (Mo. App. E.D. 1995). The evidence is sufficient to sustain a conviction if a reasonable juror might have found a defendant guilty beyond a reasonable doubt. Id.

In considering whether the evidence is sufficient to support the jury's verdict, we must look to the elements of the crime and consider each in turn. State v. Thomas, 75 S.W.3d 788, 90 (Mo. App. E.D. 2002). We are required to take evidence in the light most favorable to the State and to grant the State all reasonable inferences from the evidence. Id. ... A person who acts with another with common intent and purpose in the commission of a crime is guilty, whether he is a principal or merely abets the crime. [State v. May, 71 S.W.3d 177, 183 (Mo. App. W.D. 2002)]. Any evidence

that shows affirmative participation in aiding the principal to commit the crime is sufficient to support a conviction. Id.

...

In the case before us, Defendant's palm print was found on the surface of the counter that Montague had cleaned with window cleaner the night before. Jewelry and cash from the robbery was found in Defendant's possession and given to Defendant's friends and relatives. Police found a detailed plan for robbing Four-M's in Defendant's room. Martin initially told the police that the and Defendant robbed Four-M's together. The jury clearly was not persuaded by Martin's trial testimony that Defendant was not involved in the robbery. ... [T]here is substantial evidence linking Defendant to the Four-M's robbery. The trial court did not err in failing to grant a judgment of acquittal to Defendant. The point is denied.

Resp. Ex. F at 5-7.

Pursuant to Williams, the court will consider federal law applicable to the issue raised in Petitioner's Ground 1. The United States Supreme Court held in Wright v. West, that "a claim that evidence is insufficient to support a conviction as a matter of due process depends on 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" 505 U.S. 277, 283-84 (1992) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). See also Scott v. Jones, 915 F.2d 1188, 1190 (8th Cir. 1990); Haymon v. Higgins, 846 F.2d 1145, 1146 (8th Cir. 1988). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to ultimate facts." Jackson, 443 U.S. at 319. See also Whitehead v. Dormire, 340 F.3d 532, 536 (8th Cir. 2003) ("We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that resolution.") (internal citations omitted); Weston v. Dormire, 272 F.3d 1109, 1111 (8th Cir. 2001) ("In determining the sufficiency of the evidence in habeas cases under 28 U.S.C. § 2254, we view the evidence in the light most favorable to the

prosecution and decide whether any rational jury could have found, beyond a reasonable doubt, all of the elements of the crime.") (citing Jackson, 443 U.S. at 319, 321, 324; Loeblein v. Dormire, 229 F.3d 724, 726 (8th Cir. 2000)).

First, upon determining whether the evidence was sufficient to convict Petitioner, the Missouri appellate court considered that its role was to determine whether a reasonable trier of fact could find Petitioner guilty. See Wright, 505 U.S. 277, 283-84. Second, the Missouri appellate court considered the elements of the crime of which Petitioner was found guilty and noted that to be convicted as an accomplice, the evidence need only show Petitioner's affirmative participation in the crime. See id. Third, the Missouri appellate court concluded that the evidence supported the jury's verdict. As such, the Missouri appellate court's consideration of the issue of Petitioner's Ground 1 is not contrary to federal law and is a reasonable interpretation of federal law. See Wright, 505 U.S. at 283-84; Jackson, 443 U.S. at 319. Moreover, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that the issue raised in Ground 1 is without merit and that habeas relief on its basis should be denied.

**Ground 2 - Petitioner received ineffective assistance of counsel because trial counsel failed to advise him that he had a right to testify at the hearing to suppress his statements:**

In support of Ground 2, Petitioner argues that the decision of the Missouri appellate court was contrary to and involved an unreasonable application of federal law. Petitioner further argues that had trial counsel advised him of his right to testify at the suppression hearing, he would have testified that he was beaten by the police and coerced into making statements. Petitioner contends that the court would have suppressed the statements if it had heard his testimony. Doc. 14 at 3-4.

Prior to trial, counsel filed a filed a motion to suppress Petitioner's statements to the police.

Resp. Ex. C at 44-46. This motion alleged that Petitioner was not presented to a judge "as soon as practicable"; that the length and nature of Petitioner's custody and the duration and nature of the interrogation were inherently coercive; that Petitioner was subject to mental, physical, and psychological duress; that Petitioner's confession was induced by promises of leniency; that Petitioner was not advised of his constitutional rights; and that Petitioner's request for counsel and his assertion of his right to remain silent were ignored by the police who continued to interrogate Petitioner. Resp. Ex. C at 44-45.

Outside the presence of the jury, the trial court held an evidentiary hearing on Petitioner's motion. Resp. Ex. A, Trial Transcript ("Tr.") at 182-215. At that motion hearing, Sgt. Foster testified that when he first detained Petitioner and Martin, he gave both of them <u>Miranda</u> warnings and Petitioner stated that he understood his rights; that Sgt. Foster did not question Petitioner at that point and waited until he transferred Petitioner to the North Patrol Station; that Sgt. Foster took Petitioner into an interview room and again advised him of his <u>Miranda</u> rights; that Petitioner denied knowing anything about the robbery; that Sgt. Foster informed Petitioner of his intent to go to Petitioner's home and Petitioner told Sgt. Foster to do what he had to do; that, when Sgt. Foster asked Petitioner if he wanted to accompany him to Petitioner's home, Petitioner laughed and told Sgt. Foster that he did not have any evidence against Petitioner; that, after Sgt. Foster searched Petitioner's home, with the permission of Petitioner's mother, he returned to the holding cell to inform Petitioner that he had discovered the jewelry, the notebook, and the pistol; that Petitioner then asked Sgt. Foster if it was too late to speak with him and Sgt. Foster asked Petitioner if he wanted to talk to him; that Petitioner responded, "Yes"; that Sgt. Foster took Petitioner back to the interview room and again advised him of his <u>Miranda</u> rights in front of Detectives Blakemore and Chaney; that,

after Petitioner told Detective Foster what he knew about the robbery, he agreed to make a statement on tape; and that, on the tape, Sgt. Foster again advised Petitioner of his rights and Petitioner agreed to waive his rights and speak with Sgt. Foster. Sgt. Foster denied making any threats or promises to get Petitioner to make the taped statement and testified that he did not witness any other officer threaten Petitioner. The tape of Petitioner's interview was played for the court. The prosecutor also prepared a transcription of the tape which the trial court read along with listening to the tape. Tr. 182-204, 211-12.

Trial counsel did not present any evidence at the motion hearing. Tr. 208. The trial court ordered that certain references Petitioner made during the interview to prior crimes be redacted and, otherwise, denied the motion to suppress. Tr. 213-216. The trial court found that, although it could only hear and not see Petitioner's giving his statement, "a certain amount of [his] demeanor [was] pretty clear. A lot of his answers were very open-ended and not necessarily directly responsive to the questions. Most of the questions were leading. It's very, very clear that this was a candid commentary by [Petitioner], and there are no Constitutional problems which would impact upon the admissibility of the statement." Tr. 215. Over Petitioner's objection, his statement was introduced at trial after Sgt. Foster again testified to the procedures he followed, including his giving Petitioner Miranda warnings.[2] Tr. 398-99, 417-22.

Upon addressing the issue of Petitioner's Ground 2, the Missouri appellate court held:

> It is clear the right to testify on one's own behalf is a fundamental right which may only be waived by the individual criminal defendant. State v. Edwards, 173 S.W.3d 384, 385-386 (Mo. App. E.D. 2005). However, in this case, [Petitioner] does not claim that his right to testify was infringed upon by his counsel or the court.

---

[2]       The trial court did not allow the transcript to be admitted at trial due to variations between the transcript and the recording. Resp. Ex. at 49-71.

[Petitioner] does not claim that he requested to testify at the hearing, and was denied that right. The decision to testify solely rests with the defendant. <u>Rousan v. State</u>, 48 S.W.3d 576, 585 (Mo. banc 2001). Without any evidence in the record that [Petitioner] wished to assert this right at the time of the hearing, we cannot find fault with the court or ineffective assistance of counsel for not allowing him to do so. C.f. <u>Edwards</u>, 173 S.W.3d at 386.

[Petitioner] claims that if he had known he could testify in his own behalf at the suppression hearing, he would have testified to the court about being beaten by the police officers while in custody in order to coerce his confession about the robbery; the court would have granted the motion to suppress his confession; and the result of the trial would have been different had the jury not heard his confession.

We disagree. First, the court found that it would not have suppressed [Petitioner]'s confession if it had heard [Petitioner]'s testimony at the suppression hearing. Therefore, the jury would have heard it and the result of the trial could not have been any different if [Petitioner] had testified. Second, the court found, and our review of the record supports such finding, that there was ample evidence besides [Petitioner]'s confession supporting [Petitioner]'s guilt, to whit: his fingerprint on the glass case in the pawn shop; the gun in the basement; the notebook found in [Petitioner]'s bedroom outlining the steps in his plan to rob the pawn shop, even though some of the details in the plan were not followed; and jewelry stolen from the pawn shop in the possession of [Petitioner]'s mother, sister and girlfriend. [Petitioner]'s examples of how his other evidence can be explained are not convincing.

For the foregoing reasons, [this] Point [] is denied.

Resp. Ex. K at 6-7.

Pursuant to <u>Williams</u>, the court will consider federal law applicable to the issue raised in Petitioner's Ground 2. The court has set forth above the federal standard applicable to claims of ineffective assistance of counsel. Pursuant to this standard, the Missouri appellate court considered that, even if Petitioner had testified at the suppression hearing, the court would not have suppressed his statement. The Missouri appellate court further considered that Petitioner's conviction was not dependent on the admission of his statement as there was ample evidence to support Petitioner's guilt, including to his fingerprints, the gun, the notebook, and the stolen jewelry being in the possession of

Petitioner's family and relatives. As such, pursuant to the second prong of the <u>Strickland</u> test, Petitioner could not establish that he was prejudiced by counsel's alleged ineffectiveness.

Moreover, the Eighth Circuit has held:

> "[T]he interests at stake in a suppression hearing are of a lesser magnitude than those in the criminal trial itself. At a suppression hearing, the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." <u>United States v. Raddatz</u>, 447 U.S. 667, 679, 100 S.Ct. 2406, 2414, 65 L.Ed.2d 424 (1980); <u>United States v. Matlock</u>, 415 U.S. 164, 172-74, 94 S.Ct. 988, 993-95, 39 L.Ed.2d 242 (1974). This difference in procedural protections is reflected in the Federal Rules of Evidence. Rule 104(a) states that the trial court, in making its determination of preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence, "is not bound by the rules of evidence except those with respect to privileges."

<u>United States v. Boyce</u>, 797 F.2d 691, 693 (8th Cir. 1986). <u>See also</u> <u>United States v. Thompson</u>, 533 F.3d 964, 969 (8th Cir. 2008).

Also, under federal law, counsel is not constitutionally required to file a motion to suppress as such a decision is a matter of trial strategy. <u>See</u> <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 383-84 (1986). Additionally, the Supreme Court held in <u>Kimmelman</u>, when a defendant contends that counsel was ineffective in the context of a suppression hearing, "a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim." 477 U.S. at 382. Even "a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief." <u>Id.</u> Thus, "where a defendant does not testify at a suppression hearing because he relied on the advice of counsel, the issue is best approached in terms of whether the advice was reasonable and whether, if the advice had been different, it would have affected the outcome of the hearing." <u>Hemingway v. Henderson</u>, 754 F. Supp. 296, 302 (E.D.N.Y. 1991) (citing <u>Kimmelman</u>, 477 U.S. 365).

To the extent that Petitioner's Ground 2 is analogous to a claim of ineffective assistance of

counsel based on the failure to call a witness, federal law provides that "[d]ecisions relating to witness selection are normally left to counsel's judgment, and 'this judgment will not be second-guessed by hindsight.'" Hanes v. Dormire, 240 F.3d 694, 698 (8th Cir. 2001) (citations omitted). Where some potential witnesses' testimony might have been helpful in rebutting or clarifying evidence, in order to establish a constitutional violation a habeas petitioner must establish that the "proffered testimony was so important as to put counsel's failure to consult with or call [ ] witnesses outside the wide range of strategic choices that counsel is afforded." Id. The decision whether to call witnesses may be a matter of trial strategy. Hall v. Lubbers, 296 F.3d 685, 694 (8th Cir. 2002); Battle v. Delo, 19 F.3d 1547, 1556 (8th Cir. 1994).

Additionally, in Colorado v. Connelly, 479 U.S. 157, 166 (1986), the United States Supreme Court held that "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." The Court further held, in Connelly, that:

> There is obviously no reason to require more in the way of a "voluntariness" inquiry in the Miranda waiver context than in the Fourteenth Amendment confession context. The sole concern of the Fifth Amendment, on which Miranda was based, is governmental coercion. See United States v. Washington, 431 U.S. 181, 187, 97 S.Ct. 1814, 1818, 52 L.Ed.2d 238 (1977); Miranda, supra, 384 U.S., at 460, 86 S.Ct., at 1620. Indeed, the Fifth Amendment privilege is not concerned "with moral and psychological pressures to confess emanating from sources other than official coercion." Oregon v. Elstad, 470 U.S. 298, 305, 105 S.Ct. 1285, 1290, 84 L.Ed.2d 222 (1985). The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on "free choice" in any broader sense of the word. See Moran v. Burbine, 475 U.S., at 421, 106 S.Ct., at 1141 ("[T]he relinquishment of the right must have been *voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. ... [T]he record is devoid of any suggestion that police resorted to physical or psychological pressure to elicit the statements*"); Fare v. Michael C., 442 U.S. 707, 726-727, 99 S.Ct. 2560, 2572-2573, 61 L.Ed.2d 197 (1979) (The defendant was "not worn down by improper interrogation tactics or lengthy

questioning or by trickery or deceit.... *The officers did not intimidate or threaten respondent in any way.* Their questioning was restrained and free from the abuses that so concerned the Court in Miranda").

Id. at 167-170 (emphasis added).

Further, the Eighth Circuit holds that error in admitting a confession may be harmless "'where the other evidence against [a defendant was] so weighty it assured beyond a reasonable doubt that the jury would have returned a conviction even absent the confession.'" Lyons, 403 F.3d at 597 (quoting United States v. Santos, 235 F.3d 1105, 1108 (8th Cir.2000)) (citing Mathenia v. Delo, 975 F.2d 444, 448 (8th Cir.1992) (holding that while a death-penalty habeas applicant's "graphic confession was destructive to his defense, it was far from the only evidence against him," and the district court correctly found "the defense was not prejudiced since the outcome would not have been different had the confession been suppressed"); United States v. Packer, 730 F.2d 1151, 1157 (8th Cir.1984) ("The admission of statements obtained in violation of Miranda may constitute harmless error when there remains overwhelming independent evidence as to the defendant's guilt.").

Upon considering the issue of Petitioner's Ground 2, the Missouri appellate court considered that the right to testify on one's own behalf is a fundamental right; that Petitioner was not claiming that he was denied the right to testify at trial or that it was denied by counsel or the court; that he did not claim that he requested to testify at the suppression hearing; that, had Petitioner testified, his confession would not have been suppressed; that there was ample evidence, besides Petitioner's confession, supporting the guilty verdict; and that, therefore, the outcome of Petitioner's trial would not have been different had he testified at the suppression hearing. The court finds, therefore, that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 2 is not contrary to federal law and that it is a reasonable application of federal law. See Connelly, 479 U.S.

at 166; <u>Kimmelman</u>, 477 U.S. at 383-84; <u>Lyons</u>, 403 F.3d at 597; <u>Hanes</u>, 240 F.3d at 698; <u>Boyce</u>, 797 F.2d at 693. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. As such, the court finds that Petitioner's Ground 2 is without merit and that habeas relief on its basis should be denied.

**Ground 3 - Petitioner received ineffective assistance of counsel because counsel did not ask Sgt. Foster if he had beaten Petitioner with telephone books and nightsticks in order to get Petitioner to confess:**

In support of Ground 3, Petitioner argues that his trial counsel attempted to cross-examine Sgt. Foster; that the State objected to the form of the question; that the court sustained the objection; and that, had counsel properly phrased the question, the State would not have objected and the jury would have heard that Petitioner's confession was coerced. Doc. 14 at 6. Petitioner further argues that had the jurors understood that Petitioner's confession was coerced, they would not have convicted him. Doc. 14 at 6-7.

Upon addressing the issue of Petitioner's Ground 3, the Missouri appellate court held:

Foster testified that he did not lay a hand on or threaten [Petitioner] while [Petitioner] was in his custody. When [Petitioner]'s counsel cross-examined Foster on this issue, counsel did not directly ask Foster if he used telephone books held against [Petitioner]'s head while beating the books with a nightstick. Rather, counsel asked Foster if he had seen the 60 Minutes episode where, presumably, this procedure was examined. The State objected right after counsel said "60 Minutes episode," and the court sustained the objection. Counsel then rephrased the question and asked Foster whether he had ever heard of "using phone books." Again, the State objected and the court sustained the objection. The court stated that "[t]his is not the movies. Stick to the facts. I'm instructing you to stay away from that subject." Counsel asked for a sidebar which the court refused.

[Petitioner] claims that counsel was ineffective for questioning Foster in this manner, and that he should have directly asked Foster if he used this telephone book beating interrogation tactic on [Petitioner] to coerce his confession. The motion court stated in its findings that even if this line of questioning had been pursued, Foster had already answered in the negative and adamantly testified that "I never, never laid a

21

hand on him" when asked whether he had punched [Petitioner] on the left side of the face, the right side of the face, or the chest. Therefore, it would be unlikely that if asked whether he had used a telephone book in beating [Petitioner], that Foster's testimony that he "never, never laid a hand" on [Petitioner], would change.

Also, as noted above, there was ample evidence of [Petitioner]'s guilt other than the confession, including the fingerprint, gun, plan, and jewelry. Accordingly, for all of these reasons, [this] Point [] is denied.

Resp. Ex. K at 7-8.

The court has set forth, above, the standard applicable to allegations of ineffective assistance of trial counsel. The Missouri appellate court determined, pursuant to the second prong of the Strickland test that, even if counsel had asked Sgt. Foster if he had beaten Petitioner with telephone books and nightsticks to get him to confess, Sgt. Foster would have testified that he did not do so. Moreover, the Missouri appellate court considered that Sgt. Foster did testify that he never laid a hand on Petitioner. Under such circumstances, the court concluded, pursuant to the second prong of the Strickland test, that the outcome of Petitioner's trial would not have been different had counsel asked Sgt. Foster if he beat Petitioner with telephone books and nightsticks. The court finds, therefore, that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 3 is not contrary to federal law and that it is a reasonable application of federal law. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. As such, the court finds that Petitioner's Ground 3 is without merit and that habeas relief on its basis should be denied.

# V.
# CONCLUSION

The court finds that Petitioner's Grounds 1, 2, and 3 are without merit and that Petitioner's § 2254 Petition should be denied in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise to any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should not be granted a certificate of appealability in this matter. See Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED**; Doc. 1

**IT IS FURTHER RECOMMENDED** that, for the reasons stated herein, any motion by Petitioner for a certificate of appealability be **DENIED**;

The parties are advised that Petitioner has fourteen (14 ) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of June, 2012.